KOZINSKI, Circuit Judge,
with whom Circuit Judge GOULD joins, concurring:
I must join because the opinion faithfully applies our circuit’s precedents, which accord federal-court defendants the procedural advantages of California’s anti-SLAPP law. See Batzel v. Smith, 333 F.3d 1018, 1024-26 (9th Cir. 2003); United States ex rel. Newsham v. Lockheed Missiles & Space Co., 190 F.3d 963, 970-73 (9th Cir. 1999). But I write once again to emphasize that our caselaw is wrong: These interloping state procedures have no place in federal court. See Makaeff v. Trump Univ., LLC, 715 F.3d 254, 272 (9th Cir. 2013) (Kozinski, C.J., concurring).
Our precedents have not aged with grace. Ever since we allowed them to take root, anti-SLAPP cases have spread like kudzu through the federal vineyards. A casual Westlaw search suggests that such cases have more than tripled over the last ten years.[1] And nowhere are anti-SLAPP cases more common than in the Ninth Circuit: The Westlaw data suggest that courts in our circuit have heard 80 percent of these cases over the same decade.[2] In *1183 other words, 80 percent of the problem is right here.
Fortunately, other circuits are starting to recognize this problem for what it is. When our court last considered the place of anti-SLAPP motions in federal court, some of our colleagues saw unanimity among our sister circuits and were reluctant to create a split. See Makaeff v. Trump Univ., LLC, 736 F.3d 1180, 1187 (9th Cir. 2013) (Wardlaw and Callahan, JJ., concurring in the denial of rehearing en banc). We can stop worrying: The D.C. Circuit has reached the overdue conclusion that anti-SLAPP motions don’t belong in federal court because they directly conflict with the Federal Rules of Civil Procedure. Abbas v. Foreign Policy Grp., LLC, 783 F.3d 1328, 1333-37 (D.C. Cir. 2015). Now we’ve got a circuit split, and we’re standing on the wrong side.
It’s time to get it right. We should follow the D.C. Circuit’s lead in giving these trespassing procedures the boot. At the very least, we should reassess whether defendants who lose on their anti-SLAPP motions have the right to an immediate appeal. Either would be a welcome step toward cleaning up our docket and securing the border between state and federal law.
Let’s review the basics: Every first-year law student learns (or is supposed to learn) that federal courts in diversity cases apply state law to substantive questions. Was the contract breached? Was the accident negligent? See Erie R.R. v. Tompkins, 304 U.S. 64, 78-79, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). But procedural questions are different. When the state law directly conflicts with one of the Federal Rules, the outcome is simple: The Federal Rules trump.[3]
California’s anti-SLAPP law directly conflicts with Federal Rule 12, which provides a one-size-fits-all test for evaluating claims at the pleading stage. To survive a 12(b)(6) motion to dismiss, a plaintiffs complaint has to state a claim that is “plausible on its face.” Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). California, on the other hand, gives defendants a “special motion to strike” any claims that arise from protected speech activities. Cal. Civ. Proc. Code § 425.16(b)(1). To survive this motion, a plaintiff must show that he has a “probability” of succeeding on the underlying claim. Id. This requires demonstrating that the claim is legally sufficient and “supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.” Wilson v. Parker, Covert & Chidester, 28 Cal.4th 811, 123 Cal.Rptr.2d 19, 50 P.3d 733, 739 (2002) (citations omitted).
In short, “probability” is a much higher bar than “plausibility”: California’s special motion requires supporting evidence at the pleading stage; Rule 12 doesn’t. That’s a problem because the Supreme Court has decided that the plausibility standard alone strikes the right balance between avoiding wasteful litigation and giving plaintiffs a chance to prove their claims. See Twombly, 550 U.S. at 556, 127 S.Ct. 1955; see also Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The Supreme Court’s balance might be the wrong one, of course, but that’s not something that the state of California gets to decide. The plausibility standard isn’t a floor or a ceiling from which we can depart. Using California’s standard in federal court means that some plaintiffs with plausible claims will have their cases dismissed before they’ve had a chance to *1184 gather supporting evidence. It’s obvious that the two standards conflict.
But it wasn’t so obvious to our court. In Newsham, we erroneously reasoned that Rule 12 and the California statute were at peace because a defendant could still bring a Rule 12 motion if his special motion to strike was unsuccessful. 190 F.3d at 972. But what’s the point? If a plaintiff survives an anti-SLAPP motion by showing that his claim is legally sufficient and has a probability of success, how could he lose on a Rule 12 motion that requires him to show mere plausibility? He can’t.
Our acceptance of anti-SLAPP special motions was bad enough, but we made the problem worse by allowing defendants to bring interlocutory appeals. See Batzel, 333 F.3d at 1024-26. This case is a perfect example of the consequences of that decision. Robert Hirsh appealed to our court after the district court denied his meritless motion to strike. That was in the spring of 2014. Two years and a few hundred billable hours later, we’re sending the case back for the district court to pick up right where it left off.
To avoid these pointless and costly detours, parties usually get to appeal only once, after the district court has entered its final judgment. See Mohawk Indus. Inc. v. Carpenter, 558 U.S. 100, 106, 130 S.Ct. 599, 175 L.Ed.2d 458 (2009). The collateral order doctrine provides an exception, but only a select number of decisions are supposed to get into this exclusive club. See Dig. Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 867-68, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994). Despite many efforts to expand the guest list, the Supreme Court has kept the collateral order doctrine “narrow and selective in its membership.” Will v. Hallock, 546 U.S. 345, 350, 126 S.Ct. 952, 163 L.Ed.2d 836 (2006). Undaunted by the Supreme Court’s repeated warnings, our circuit has welcomed anti-SLAPP appeals with open arms. Batzel, 333 F.3d at 1024-26; see also DC Comics v. Pac. Pictures Corp., 706 F.3d 1009, 1012-16 (9th Cir. 2013) (reaffirming Batzel).
But this inclusive spirit was a mistake. A collateral order is supposed to meet three requirements: It must be “conclusive”; it must “resolve important questions completely separate from the merits”; and it must be “effectively unreviewable” after final judgment. Dig. Equip. Corp., 511 U.S. at 867, 114 S.Ct. 1992. A decision on the motion to strike fails the latter two of the three.[4]
Anti-SLAPP motions have the merits painted all over them. California’s statute asks us to determine whether “there is a probability that the plaintiff will prevail on the claim.” Cal. Civ. Proc. Code § 425.16(b)(1). This can mean only one *1185 thing: an evaluation of the merits. Batzel tried to explain away this unfortunate textual obstacle by musing mysteriously that a court denying an anti-SLAPP motion is “merely fmd[ing] that such merits may exist, without evaluating whether the plaintiffs claim will succeed.” 333 F.3d at 1025. Ponder that. Perhaps a poet[5] can explain how a determination that the merits exist can be “completely separate” from those merits. But our circuit hasn’t done it yet.
And it can’t. Our experience with these cases has shown us that they require an “exhaustive analysis of the merits.” See Makaeff, 736 F.3d at 1190 (Watford, J., dissenting from the denial of rehearing en bane). An exhaustive (and exhausting) detour is exactly what the final judgment rule is designed to avoid. Interlocutory appeals make it hard for a district court to supervise a trial. Johnson, 515 U.S. at 309, 115 S.Ct. 2151. They undermine the efficient administration of justice when, as. here, a meritless appeal stalls a case for years. See Mohawk Indus., 558 U.S. at 106, 130 S.Ct. 599. And they ask our court to dive headlong into the merits of a case only to swim back, years later, when it’s finally appealed from final judgment.
Of course, if our precedents are correct, we must take interlocutory appeals from the denial of anti-SLAPP motions because they would be effectively unreviewable after final judgment. Batzel, 333 F.3d at 1025. But we don’t need to look very far to see that this holding is completely out of step with how we treat similar orders. After all, the denial of a 12(b)(6) motion isn’t immediately appealable, and Rule 12 and California’s anti-SLAPP statute serve a Common purpose: eliminating frivolous or bullying claims before the parties pay through the nose in discovery and suffer the other indignities of a trial. Nobody suggests that the district court’s decision denying a 12(b)(6) motion is “effectively unreviewable” at the end of the case because the defendant has to incur an extra cost to get there. But that’s exactly the reasoning our court has adopted to allow immediate appeals from denials of anti-SLAPP motions.
In Batzel, we made anti-SLAPP motions sound more impressive by asserting that they gave defendants a form of “immunity” from suit. 333 F.3d at 1025. Because immunity would be useless if the defendant had to wait to appeal, we found that denying a special motion would indeed be “effectively unreviewable” after final judgment. Id. The suggestion that California had granted certain defendants immunity from suit should have immediately put us on high alert, because claims of a “right not to be tried” are supposed to be viewed “with skepticism, if not a jaundiced eye.” Dig. Equip., 511 U.S. at 873, 114 S.Ct. 1992. And we should have been especially skeptical here because the statute itself makes no mention of immunity. Cal. Civ. Proc. Code § 425.16. Either way, tossing around the magic word immunity shouldn’t distract us from the substantive point: What does an anti-SLAPP motion confer that Rule 12 doesn’t? While they’re different in degree, both procedures save a defendant from a costly lawsuit when the plaintiffs complaint hasn’t met a threshold standard. Both are about reducing the incentive to bring frivolous claims. Defendants who claimed that Rule 12 provided them with “immunity from suit” would get laughed at. Anti-SLAPP defendants who *1186 make the same claim should be treated no differently.
Some of our recent decisions have started to turn the tide against these encroaching state procedures. In Metabolife International, Inc. v. Wornick, we held that a provision of the law that stayed discovery while a special motion was being decided conflicted with Federal Rule of Civil Procedure 56(f)’s discovery requirement and didn’t belong in federal court. 264 F.3d 832, 846 (9th Cir. 2001). And we recently pulled another tooth from the law, holding that federal plaintiffs can’t immediately appeal some grants of special motions because doing so would conflict with Rule 54(b)’s definition of appealable final orders. Hyan v. Hummer, No. 14-56155, 825 F.3d 1043, 1045-47, 2016 WL 3254701 (9th Cir. June 14, 2016) (per curiam).
Now it’s time to deliver the coup de grace. We were wrong in Newsham and Batzel, and wrong not to take Makaeff en banc to reverse them. But it’s not too late to correct these mistakes. Cases like this one have no place on our docket, and we should follow the D.C. Circuit'in extirpat-. ing them. Our ink and sweat are better spent elsewhere.

. A Westlaw search of federal cases by year for the term “anti-SLAPP,” performed on July 11, 2016, generated 43 hits for 2006 and 138 hits for 2015. The number of hits rises more- or-less steadily in the intervening years.

. Of the 994 hits on Westlaw for the term "anti-SLAPP” in federal courts between the start of 2006 and the end of 2015, 797 of them (80.2%) were in dispositions from courts in the Ninth Circuit. Appeals are up too. According to our clerk’s office, the Ninth Circuit inventoried an average of 13.6 anti-SLAPP appeals per year from 2011 to 2015. We inventoried an annual average of 7.4 from 2006 to 2010, and an average of 3 per year from 2001 to 2005.

. The Federal Rule will trump as long as it complies with the Rules Enabling Act, and the Supreme Court has held that a Rule will do so if it "really regulates procedure.” Sibbach v. Wilson & Co., 312 U.S. 1, 14, 61 S.Ct. 422, 85 L.Ed. 479 (1941). No Federal Rule has ever failed the Sibbach test.

. We can see that anti-SLAPP motions are a poor fit for the collateral order doctrine by considering the three requirements or simply by comparing these motions to others that the Supreme Court has said are immediately ap-pealable. For example, claims of absolute immunity qualify because they present the legal question of whether the defendant is in a class of people that can’t be sued in the first place. See Nixon v. Fitzgerald, 457 U.S. 731, 741-43, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982). The same is true for some qualified immunity determinations. We accept interlocutory appeals to determine whether a law that a government actor allegedly violated was clearly established at the time. See Mitchell v. Forsyth, 472 U.S. 511, 526-27, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). But in answering this purely legal question, we don’t address the merits of the underlying suit — that is, whether the official actually broke the law. In contrast, interlocutory appeals are not allowed from qualified immunity determinations that turn on factual disputes' — for example, whether a specific police officer had taken part in the plaintiff's beating — because the question posed is intertwined with the merits of the case. See Johnson v. Jones, 515 U.S. 304, 313— 14, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995).

. As Juan Antonio puts it in Woody Allen’s Vicky Cristina Barcelona: "It's funny. Maria Elena and I, we are meant for each other and not meant for each other. It’s a contradiction. I mean, in order to understand it, you need a poet, like my father. Because I don’t.” Vicky Cristina Barcelona (The Weinstein Company 2008).