**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

K. W., by his next friend D.W.; C. M.; C. L.; A. L., through her guardian E.B.; K. S., through his next friend S.S.; M. S., through his guardian V.S.; N. R., through her next friend G.R.; T. F., through her guardian R.F.; T. M., through his guardian T.W.; B. B., through his next friend D.B.; R. P., through her guardian T.P.; M. S., through her guardian D.S.; E. L.; TOBY SCHULTZ, by and through his legal guardian Jana Schultz on behalf of himself and all others similarly situated; BREANNA MULLIC, by and through her legal guardian Brenda Passmore; CALEB HALL, by and through his next friend Melanie Hall, *Plaintiffs-Appellees*,

v.

RICHARD ARMSTRONG, in his official capacity as Director of the Idaho Department of Health and Welfare; LISA HETTINGER, in her official capacity as Medicaid Administrator of the Idaho Department of Health and Welfare; IDAHO DEPARTMENT

No. 14-35296

D.C. Nos.
1:12-cv-00022-BLW
3:12-cv-00058-BLW

OPINION

OF HEALTH AND WELFARE, a
department of the State of Idaho,
            *Defendants-Appellants*.

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, Chief District Judge, Presiding

Argued and Submitted
November 18, 2014—Portland, Oregon

Filed June 5, 2015

Before: Richard R. Clifton, Milan D. Smith, Jr.,
and Andrew D. Hurwitz, Circuit Judges

Opinion by Judge Milan D. Smith, Jr.;
Partial Concurrence and Partial Dissent by Judge Clifton

## SUMMARY[*]

### Medicaid Act

The panel affirmed the district court's order expanding a preliminary injunction forbidding the Idaho Department of Health and Welfare from decreasing the individual budgets of participants in and applicants to Idaho's Developmental Disabilities Waiver program without adequate notice.

The DD Waiver program supplants traditional Medicaid plan services for Idaho beneficiaries with home-based support services.  The plaintiffs allege that the budget-decrease notices that the Department sent violated both the Due Process Clause and the fair hearing requirements of the Medicaid Act.

The panel held that the dispute was ripe for resolution because the plaintiffs alleged that they suffered a deprivation of services without adequate notice when their budgets were decreased, and thus felt the effects of the Department's actions in a concrete way.

The panel affirmed the district court's order expanding the preliminary injunction to cover a subsequently-certified plaintiffs' class.  The panel held that the district court did not abuse its discretion in finding that the plaintiffs were likely to succeed on the merits of their claims under the Due Process Clause and the Medicaid Act.  The panel rejected the Department's argument that the preliminary injunction

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

violated the Eleventh Amendment by awarding retrospective relief against the state.

The panel held that it lacked pendent jurisdiction to review the district court's order denying the Department's motion to approve a proposed revised budget notice to the class because this order was not inextricably intertwined with whether the district court abused its discretion in expanding the preliminary injunction.

Concurring in part and dissenting in part, Judge Clifton wrote that the panel had pendent jurisdiction over the district court's denial of the Department's motion to approve a proposed revised notice because if the revised notice were adequate, then the plaintiffs would not have established an ongoing violation, and there would have been no good reason to extend the preliminary injunction.

---

## COUNSEL

Cynthia Yee-Wallace (argued), Clay R. Smith, and W. Scott Danzig, Deputy Attorneys General, Office of the Attorney General, Boise, Idaho, for Defendants-Appellants.

Richard Alan Eppink (argued), American Civil Liberties Union of Idaho Foundation, Boise, Idaho; James Piotrowski, Herzfeld & Piotrowski, LLP, Boise, Idaho, for Plaintiffs-Appellees.

---

**OPINION**

M. SMITH, Circuit Judge:

Richard Armstrong, in his official capacity as Director of the Idaho Department of Health and Welfare, Lisa Hettinger, in her official capacity as Medicaid Administrator of the Idaho Department of Health and Welfare, and the Idaho Department of Health and Welfare (collectively, Department), appeal from the district court's order expanding a preliminary injunction forbidding the Department from decreasing the individual budgets of a class of participants in and applicants to Idaho's Developmental Disabilities Waiver program (DD Waiver program) without adequate notice. The Department also seeks review of the district court's order denying its motion to approve a proposed Budget Notice to the class.

On appeal, the Department argues that the Plaintiffs' claims are not ripe because calculating a lower individual budget does not trigger the fair hearing provisions of the Medicaid Act, 42 U.S.C. § 1396a(a)(3); 42 C.F.R. § 431.206, or deprive a participant of property under the Due Process Clause, U.S. Const. amend. XIV, § 1. The Department also argues that the Plaintiffs failed to show that they were likely to succeed on the merits of their claims and that the injunction violated the Eleventh Amendment.

We affirm the district court's extension of the preliminary injunction to the class and hold that we lack pendent jurisdiction to review the order regarding the proposed notice.

**FACTUAL AND PROCEDURAL BACKGROUND**

## I.   Factual Background

The Medicaid Act allows states to apply for a waiver to provide home- and community-based services to developmentally disabled Medicaid beneficiaries to help them avoid institutionalization. *See* 42 U.S.C. § 1396n; 42 C.F.R. § 440.180. The federal government has approved Idaho's DD Waiver program, which supplants traditional Medicaid plan services for Idaho beneficiaries with home-based support services, including residential habitation services, chore services, supported employment, non-medical transportation, specialized medical equipment, home delivered meals, and skilled nursing. Idaho Admin. Code. r. 16.03.10.700. As of July 2013, there were 3,288 participants in the DD Waiver program.

The Department assigns each DD Waiver program participant an individualized budget. The budget is set "according to an individualized measurement of the participant's functional abilities, behavioral limitations, and medical needs, related to the participant's disability." *Id*. r. 16.03.10.514. Participants select the services they wish to receive by crafting an annual "plan of service" based on their individualized budgets. *Id*. r. 16.03.10.513.

The Plaintiffs represent a class of participants in and applicants to the DD Waiver program. They allege that the Department failed to give adequate notice when their individualized budgets were decreased. The Plaintiffs contend that the notices the Department sent violated both the Due Process Clause and the fair hearing requirements of the Medicaid Act.

## A.  Eligibility and Annual Reevaluation

To be eligible for DD Waiver program services, an adult Medicaid participant must have a developmental disability impairing mental or physical function or independence.  *See id*. rr. 16.03.10.500, .501, .700.  Those interested in receiving DD Waiver services must submit an application, and current participants are reassessed annually to determine whether they remain eligible.  During the annual reevaluations, the Department administers several assessments to determine a participant's eligibility and level of need.

## B.  Budget Calculation and Notice

If the Department determines that an individual is eligible for services, it must calculate the participant's individualized budget.  *See id*. rr. 16.03.10.513., .514.  To do so, the Department enters information gathered during the participant's assessments into an Adult Budget Calculation Tool (Budget Tool).  The Budget Tool is a statistical model designed to predict a participant's needs based on the participant's characteristics.  Once the Department has calculated a participant's budget for the upcoming plan year, it sends a Budget Notice to the participant confirming eligibility and specifying the budget amount.  The Budget Notices the Department sent in 2011 (2011 Budget Notices) are the subject of this dispute.

## C.  The Service Plan

If the participant does not appeal the calculated budget, the participant works with a plan developer or support broker to submit a service plan to the Department.  The service plan

lists the type and frequency of services and outlines their cost relative to the participant's calculated budget.

After the participant submits a service plan, the Department determines whether it meets the needs of the participant, safeguards the participant's health and safety, and is within the calculated budget. If the plan is inadequate or over-budget, the Department may refer the plan back to the developer for adjustment. If the plan still does not meet the participant's needs or is not within budget, the Department may either authorize some of the services or deny all of the services in the plan.

In such cases, the Department notifies the participant about which services, if any, were approved. The participant may then request an administrative appeal within 28 days. If a participant requests an appeal, a hearing officer is appointed and a hearing is held. The hearing officer may not approve eligibility, modify the budget, or approve denied services. Rather, the hearing officer may only uphold the Department's decision or remand to the Department to update assessment documents, recalculate a participant's budget, or reexamine a service denial. If the participant or the Department disagrees with the hearing officer's decision, either may seek a Director's Review. The Director's decision may be appealed to the district court.

The approved and finalized cost of services in the service plan becomes the participant's authorized budget. A participant may change his service plan with the Department's approval, but may not spend more than his calculated budget.

### D. 2011 Changes to the Budget Tool

The Department periodically evaluates and adjusts its Budget Tool. In July 2011, the Department made several changes to the Budget Tool in a purported effort to capture a participant's "living situation." Although the record does not disclose exactly how the 2011 changes accounted for "living situation," it makes clear that a number of the changes were dramatic.

First, the weights assigned to the variables–the inputs from the various assessments used to calculate the budget–changed. Second, some previous variables were dropped entirely. For example, before July 2011, "needing assistance with mobility" was a weighted variable used to calculate budgets; it no longer is.[1]

Additionally, the constant coefficient used in the Budget Tool changed. The constant coefficient before July 2011 was $54,965.65. After "living situation" became a weighted variable, the constant coefficient decreased to $24,476.75.

### E. Notice of Decreases in Class Members' Calculated Budgets

Numerous class members' individualized budgets decreased in the Fall of 2011. The Department notified participants of these cuts by sending Budget Notices. The 2011 Budget Notices did not explain why the budgets had been cut, but instead simply stated: "Using information from the Individual Needs Inventory and a complete case file

---

[1] According to the Department, the weighed variables have not changed since July of 2011.

review conducted by the Regional Independent Assessor, your individual budget is calculated to be $_____."

## II. Prior Proceedings

On January 18, 2012, twelve plaintiffs filed this action in the United States District Court for the District of Idaho seeking declaratory and injunctive relief, claiming, among other things, that the 2011 Budget Notice failed to provide meaningful notice of the reasons for the reductions in their budgets. On January 19, 2012, the Plaintiffs moved for a temporary restraining order requiring the Department to restore the Plaintiffs' Medicaid services to prior levels and barring the Department from reducing these services without providing adequate notice and a fair hearing. The district court entered a temporary restraining order on these terms on February 3, 2012, and the parties stipulated to entry of a second, supplemental temporary restraining order on February 9, 2012.

Pursuant to another stipulation, the district court entered a preliminary injunction on March 12, 2012, providing that:

> The defendants shall restore and continue the plaintiffs' Medicaid services under the Idaho Developmental Disabilities waiver as provided in the Individual Support Plans in place for each plaintiff prior to July 1, 2011, and before the last "ANNUAL ICF/ID LEVEL OF CARE AND DD ELIGIBILITY APPROVAL NOTICE" and budget assignment notice sent to them, and are prohibited from reducing or terminating Medicaid services under the Idaho

> Developmental Disabilities waiver to the plaintiffs based on their most recent assigned budget limits unless and until the defendants first *provide adequate advance notice*, approved by this Court, *and the opportunity for a fair hearing prior to the reduction or termination of services*.

(emphasis added).

On March 23, 2012, the Department moved for approval of a proposed Budget Notice (2012 Proposed Notice) informing the Plaintiffs of their individual budget amounts. The 2012 Proposed Notice informed participants that they were eligible for the DD Waiver program, explained in general terms how budgets are calculated, and set forth the specific budget amount for each individual. The proposed notice included an attachment with a copy of the budget calculation and Inventory of Needs for the participant.

On August 2, 2012, the district court denied the Department's motion to approve the 2012 Proposed Notice. *See K.W. v. Armstrong*, No. 1-12-00022, 2012 WL 3201172, at *1 (D. Idaho Aug. 2, 2012). The court found the proposed notice inadequate, both under the applicable Medicaid regulations and the Due Process Clause, because it failed to explain why participants' individual budgets had changed. *Id.* at *6.

On May 17, 2013, the Plaintiffs filed a motion for class certification, and a motion to extend the stipulated preliminary injunction to cover the class. The proposed class consisted of "all persons who are participants in or applicants to the Adult Developmental Disability Services program . . .

administered by the Idaho Department of Health and Welfare as part of the Idaho Medicaid program, and who undergo the annual eligibility determination or reevaluation process."

Before the district court ruled on the Plaintiffs' motions, the Department filed a motion for approval of a new proposed Budget Notice (2013 Proposed Notice).

On March 25, 2014, the district court issued a memorandum decision and order rejecting the 2013 Proposed Notice. *See K.W. v. Armstrong*, 298 F.R.D. 479 (D. Idaho Mar. 25, 2014), *as clarified* (Apr. 21, 2014). The order also certified the proposed class and extended the preliminary injunction to cover the class. *Id*. at 494.

The Department filed a timely notice of appeal on April 10, 2014. The Department challenges the extension of the preliminary injunction to cover the class and seeks review of the denial of its motion to approve the 2013 Proposed Notice.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to review the modification of the preliminary injunction under 28 U.S.C. § 1292(a)(1). Whether we have jurisdiction to review the order denying the motion to approve the 2013 Proposed Notice depends on whether we can exercise pendent appellate jurisdiction over this issue in conjunction with our review of the modification of the preliminary injunction. *See Meredith v. Oregon*, 321 F.3d 807, 811–16, *as amended by* 326 F.3d 1030 (9th Cir. 2003).

"We review the district court's legal conclusions *de novo*, the factual findings underlying its decision for clear error, and

the injunction's scope for abuse of discretion." *Armstrong v. Brown*, 768 F.3d 975, 979 (9th Cir. 2014) (citing *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 653 (9th Cir. 2002)).

## DISCUSSION

### I.  Ripeness

The Department first argues that this dispute is not ripe for resolution because the mere preparation of a budget does not entitle a participant to notice under either the Due Process Clause or the Medicaid Act.  The Department contends that the Plaintiffs will not suffer a deprivation of property under the Fourteenth Amendment until services are actually denied.

A determination that this dispute is not yet fit for judicial resolution would divest us and the district court of jurisdiction.  As the Supreme Court has observed,

> [r]ipeness is a justiciability doctrine designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967)).

We reject the Department's ripeness argument. Whatever the final determination of budget amounts, the Plaintiffs allege that they suffered a deprivation of services without adequate notice when their budgets were decreased. Therefore, the Plaintiffs allege that they have already felt the "effects" of the Department's actions "in a concrete way." *See id.*; *see also Alaska Airlines, Inc. v. City of Long Beach*, 951 F.2d 977, 987 (9th Cir. 1991) (noting that "[w]here . . . the threat of action is very real," challenges to legislative enactments that lack procedural protections may be ripe even if no deprivation has occurred yet). Postponing adjudication of this dispute would not bring greater clarity to whether the Department's 2011 Budget Notices were adequate. This dispute is ripe for adjudication.

## II. Whether Preliminary Injunctive Relief Was Available

"A plaintiff seeking a preliminary injunction must establish (1) likely success on the merits; (2) likely irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the plaintiff's favor; and (4) that an injunction is in the public interest." *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012) (per curiam) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "We review the district court's decision to grant or deny a preliminary injunction for abuse of discretion. Our review is limited and deferential." *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003) (en banc) (per curiam) (citation omitted).

The Department contends that the district court abused its discretion in finding that the Plaintiffs were likely to succeed on the merits of their claims under the Due Process Clause and the Medicaid Act. Because the notice requirements of

the Medicaid Act are not identical to the requirements of the Due Process Clause,[2] we address the Plaintiffs' statutory and constitutional claims separately.

## A. Likelihood of Success on the Plaintiffs' Claim under the Medicaid Act Fair Hearing Provisions

To assess whether the district court abused its discretion in holding that the Plaintiffs were likely to prevail on their claim under the Medicaid Act, we must first "determine de novo whether the [district court] identified the correct legal rule to apply to the relief requested." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009). We find that it did.

The fair hearing requirements of the Medicaid Act are defined both by statute and by regulation. The Medicaid Act requires that "[a] State plan for medical assistance must . . . provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied." 42 U.S.C. § 1396a(a)(3). Medicaid regulations in turn require state agencies to provide notice to participants of their right to a hearing under some circumstances. *See* 42 C.F.R. § 431.206. The regulations provide that an agency must "inform every applicant or beneficiary in writing . . . [o]f his right to a hearing . . . [a]t the time of any action affecting his or her

---

[2] The notice requirements of the Medicaid Act are triggered by an "action," *see* 42 C.F.R. § 431.206(c)(2), a term defined by regulation, *see id.* § 431.201. By contrast, the protections of the Due Process Clause are triggered by deprivations of constitutionally protected liberty or property interests. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972).

claim." *Id*. § 431.206(b)–(c)(2). The notice must contain, among other information, "[t]he reasons for the intended action." *Id*. § 431.210(b). The regulations define an "action" as a "termination, suspension, or reduction of Medicaid eligibility or covered services," or other specified adverse determinations. *Id*. § 431.201.

The district court applied the correct standard to the Plaintiffs' claim when it inquired whether the Department's calculation of new budgets was an "action" under the Medicaid regulations. *See id*. § 431.206(c)(2). As the district court recognized, this question turns on whether calculating a lower budget amounts to a "reduction of . . . covered services." *See id*. § 431.201. The court concluded that calculating a lower budget is an "action" because "the practical effect is a reduction in the amount of services the participant receives."

Under the second step of our abuse of discretion test, we must assess whether the district court's conclusion on this point was "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" *Hinkson*, 585 F.3d at 1262 (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 577 (1985)). We find that it was not.

The district court reasonably found that participants' services are capped by their individual budgets under Idaho law. Idaho Code § 56-255(3)(e)(ii) provides that "[t]he department shall allow budget modifications only when needed to obtain or maintain employment or when health and safety issues are identified and meet the criteria as defined in department rule." And, Idaho Administrative Code rule

16.03.10.513 provides that a participant's "plan of service is based on the individualized participant budget."

There was ample evidence in the record that, absent an appeal, the cost of a participant's service plan could not exceed the calculated budget. Service plans must be reviewed by a care manager, who may authorize the plan only if it is within the calculated budget. If the plan exceeds the calculated budget, the care manager must either authorize only services within the budget or deny the plan altogether. It does not appear that a participant may craft a service plan that exceeds the calculated budget specified in the initial Budget Notice without appealing either his budget determination or the decision of a care manager to reject his service plan. It was therefore reasonable for the district court to conclude that, as a practical matter, calculating a lower budget decreases a participant's Medicaid services, thereby triggering the notice requirements of the Medicaid regulations.

The district court also did not abuse its discretion in holding that the Plaintiffs were likely to show that the 2011 Budget Notices did not comply with the notice requirements of the Medicaid regulations. "A notice required under [42 C.F.R.] § 431.206(c)(2), (c)(3), or (c)(4) . . . must contain . . . [t]he reasons for the [State's] intended action." 42 C.F.R. § 431.210(b). The 2011 Budget Notices did not specify why individual budgets had decreased.[3]

---

[3] We assume, without deciding, that there is a private right of action under section 1983 to enforce the fair hearing requirements of the Medicaid Act. *Compare Gonzaga Univ. v. Doe*, 536 U.S. 273, 280 (2002) ("[U]nless Congress 'speak[s] with a clear voice,' and manifests an 'unambiguous' intent to confer individual rights, federal funding

**B. Likelihood of Success on the Plaintiffs' Due Process Claim**

We also conclude that the district court did not abuse its discretion in holding that the Plaintiffs were likely to prevail on their claim that they were denied adequate notice under the Due Process Clause.

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). Therefore, "[t]he first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). It is well settled that a person can have a property interest in continuing to receive government benefits. *See, e.g.*, *Goldberg v. Kelly*, 397 U.S. 254, 261–63 (1970); *Rosas v. McMahon*, 945 F.2d 1469, 1474 (9th Cir. 1991) (explaining that *Goldberg* applies to a reduction of benefits). To have a property interest in a benefit, a person must "have a legitimate claim of entitlement

---

provisions provide no basis for private enforcement by § 1983." (second alteration in original) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17, 28 & n.21 (1981)), *with Watson v. Weeks*, 436 F.3d 1152, 1159–62 & n.8 (9th Cir. 2006) (analogizing 42 U.S.C. § 1396a(a)(10) to section 1396a(a)(3), the Medicaid fair hearing provision, and concluding that the former creates a right enforceable by section 1983), *and Gean v. Hattaway*, 330 F.3d 758, 772–73 (6th Cir. 2003) (holding that section 1396a(a)(3) creates a right enforceable by section 1983). The Department has not argued otherwise. *See Cal. Alliance of Child & Family Servs. v. Allenby*, 589 F.3d 1017, 1020 n.5 (9th Cir. 2009) (explaining that whether a private right of action exists is not a jurisdictional issue and may be deemed waived if not raised).

to it," not just "an abstract need or desire for it." *Roth*, 408 U.S. at 577.

The district court held that because calculating lower budgets had the practical effect of reducing the Plaintiffs' waiver services, the Plaintiffs were entitled to adequate notice under the Due Process Clause. We reach the same conclusion, but for different reasons. The district court conflated the Medicaid Act's standards governing fair hearings with the standards governing constitutional Due Process claims. While the Medicaid Act's fair hearing requirements are triggered by "actions," including reductions in benefits, the requirements of procedural due process are triggered by deprivations of property. *Compare* 42 C.F.R. §§ 431.201, 431.206(c)(2), *with Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 59. However, because the Plaintiffs had a "legitimate claim of entitlement" to waiver services as capped by the calculated budgets, we hold that the district court did not abuse its discretion in holding that the Plaintiffs were likely to prevail on their due process claim. *See Erickson v. U.S. ex rel. Dep't of Health & Human Servs.*, 67 F.3d 858, 861–62 (9th Cir. 1995) (noting that the district court's order granting an injunction to redress an alleged Due Process violation "did not address whether [medical provider] plaintiffs possessed a liberty or property interest in continued participation in Medicare," and proceeding to consider the issue de novo).

As we stated in *Orloff v. Cleland*, "[e]ntitlements are created by 'rules or understandings' from independent sources, such as statutes, regulations, and ordinances." 708 F.2d 372, 377 (9th Cir. 1983) (quoting *Roth*, 408 U.S. at 577)). Idaho regulations provide that "the Department sets an individualized budget for each participant according to an individualized measurement of the participant's functional

abilities, behavioral limitations, and medical needs, related to the participant's disability." Idaho Admin. Code r. 16.03.10.514(01). The regulations further provide that the participant's "plan of service is based on the individualized participant budget." *Id*. r. 16.03.10.513. And, the Idaho statute authorizing "[s]ervices for persons with developmental disabilities" provides that "[t]he department shall allow budget modifications only when needed to obtain or maintain employment or when health and safety issues are identified." Idaho Code § 56-255(3)(e)(ii). The Idaho regulations specifically enumerate the services covered under the DD Waiver program. *See* Idaho Admin. Code r. 16.03.10.703. Thus, participants in the DD Waiver program are entitled to a service plan featuring covered services with a total value equal to or less than a participant's individual calculated budget. Because participants have a legitimate claim of entitlement to this benefit under Idaho law, they have a property interest in continuing to receive it. *See Roth*, 408 U.S. 564.

The Department argues that even if the Plaintiffs had a property interest in their benefits, that interest was narrowly circumscribed. The Department contends that participants have no basis for expecting that their budgets will continue beyond the current year because Idaho's regulations require that a participant's individual budget be reevaluated each year.

We reject this argument. The Department would have us define the substance of the Plaintiffs' entitlement by the Department's procedures for evaluating and modifying the participants' level of services. But these procedures are precisely what the Plaintiffs challenge. If a state grants a property interest, its procedures for terminating or modifying

that interest do not narrow the interest's scope. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). As the Supreme Court has observed,

> "[p]roperty" cannot be defined by the procedures provided for its deprivation any more than can life or liberty. The right to due process "is conferred, not by legislative grace, but by constitutional guarantee. While the legislature may elect not to confer a property interest . . . , it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards."

*Id.* (quoting *Arnett v. Kennedy*, 416 U.S. 134, 167 (1974) (Powell, J., concurring in part and concurring in result in part)). "Were the rule otherwise, the [Due Process] Clause would be reduced to a mere tautology." *Id*. Because the yearly reapplication process is merely a procedure for evaluating eligibility, it does not define the substance of the Plaintiffs' property interest in their benefits.

Having found that the Plaintiffs have a property interest in their benefits, we must now examine whether providing a lower calculated budget to participants deprives them of this property interest. We find that it likely does. If a participant's new calculated budget is lower than his current budget, the participant has lost the right to craft a service plan that is equal in value to his current service plan.

The Department contends that merely calculating a lower budget for the upcoming year does not deprive a participant of property because the participant continues to receive the

services to which he is entitled under the current plan for some time after the budget notices are circulated. According to the Department, any reduction in services cannot occur until after a participant's new service plan has been developed, discussed, and approved. But there is ample evidence in the record that participants' calculated budgets effectively capped the value of services participants could receive. Therefore, once a lower budget is calculated, a participant has already effectively been deprived of the right to receive the same level of services in the coming year.

The Department also argues that merely calculating a lower annual budget does not deprive a participant of property because the budget may be increased through appeal. But just because a party deprived of property may recover it by exercising procedural rights does not mean that no deprivation occurs. A primary purpose of providing adequate notice to participants is to enable them to prepare a defense for a hearing. *See Barnes v. Healy*, 980 F.2d 572, 579 (9th Cir. 1992). It would be illogical if the availability of a hearing deprived the Plaintiffs of their right to receive the notice they need to challenge benefits reductions at that hearing.

The district court did not abuse its discretion in holding that the 2011 Budget Notices were inadequate under the Due Process Clause. "Due process requires notice that gives an agency's reason for its action in sufficient detail that the affected party can prepare a responsive defense." *Id.* (citing *Goldberg*, 397 U.S. at 267-68). The 2011 Budget Notices were inadequate because they did not specify why participants' budgets had decreased.

## C.  Likelihood of Irreparable Injury

The district court determined that the Plaintiffs established a likelihood of irreparable injury. The Department argues for the first time on appeal that the Plaintiffs failed to show that the proposed class was likely to suffer irreparable harm. The Department waived this argument by failing to raise it before the district court. *See Int'l Union of Bricklayers & Allied Craftsman Local Union No. 20, AFL-CIO v. Martin Jaska, Inc.*, 752 F.2d 1401, 1404 (9th Cir. 1985).**[4]**

## III.    The Eleventh Amendment

The Department argues that the injunction violates the Eleventh Amendment by awarding retrospective relief against the state. We disagree.

The Eleventh Amendment shields unconsenting states from suits in federal court. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). "To ensure the enforcement of federal law, however, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law," *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Ex parte Young*, 209 U.S. 123 (1908)), and courts may also order "measures ancillary to appropriate prospective relief," *id.* (citing *Green v. Mansour*, 474 U.S. 64, 71–73 (1985)). But "[f]ederal

---

**[4]** On appeal, the Department does not contest the district court's determination that "the balance of equities tips in the plaintiff[s'] favor" and that the "injunction is in the public interest." *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

courts may not award retrospective relief, for instance, money damages or its equivalent, if the State invokes its immunity." *Id.* (citing *Edelman v. Jordan*, 415 U.S. 651, 668 (1974)). Equitable relief is impermissible if it will likely require payment of state funds and "is measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials." *Edelman*, 415 U.S. at 668.

The classwide injunction grants only prospective relief allowed under the Eleventh Amendment, by restoring class members to the individualized budgets they had prior to the Department's defective 2011 Budget Notice. The injunction does not compensate class members for any loss of services that occurred prior to the date it was entered. Thus, the relief granted is not measured in terms of a past monetary loss. *See id.* We therefore join a number of our sister circuits in rejecting Eleventh Amendment challenges directed at orders reinstating social assistance benefits prospectively. *See, e.g.*, *Turner v. Ledbetter*, 906 F.2d 606, 609–10 (11th Cir. 1990); *Coalition for Basic Human Needs v. King*, 654 F.2d 838, 842 (1st Cir. 1981) ("[W]e see no Eleventh Amendment impediment to an order which enjoins the state defendants to resume payment of AFDC benefits prospectively."); *Kimble v. Solomon*, 599 F.2d 599, 605 (4th Cir. 1979) (holding that reinstating Medicaid benefits prospectively does not violate the Eleventh Amendment).

## IV.    Pendent Jurisdiction to Review Denial of Motion to Approve Notice

We now turn to the Department's argument that the district court abused its discretion by failing to approve the 2013 Proposed Notice. We must first determine whether we

have jurisdiction to review this issue. The order denying the motion to approve is not final under 28 U.S.C. § 1291, *see Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996) ("[A] decision is . . . final and appealable under § 1291 only if it ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." (internal quotation marks omitted)); does not fit within the collateral order exception to the final judgment rule, *see Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106–09 (2009); and is not an appealable interlocutory order, *see* 28 U.S.C. § 1292. The Department urges that we exercise pendent appellate jurisdiction to review the non-appealable order rejecting the 2013 Proposed Notice in conjunction with the appealable order expanding the injunction. We conclude that we may not.

"Pendent appellate jurisdiction refers to the exercise of jurisdiction over issues that ordinarily may not be reviewed on interlocutory appeal, but may be reviewed on interlocutory appeal if raised in conjunction with other issues properly before the court." *Cunningham v. Gates*, 229 F.3d 1271, 1284 (9th Cir. 2000). "[T]he Supreme Court [has] declined to settle definitively 'whether or when it may be proper for a court of appeals, with jurisdiction over one ruling, to review, conjunctively, related rulings that are not themselves appealable.'" *Meredith*, 321 F.3d at 812 (quoting *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 50–51 (1995)). We have consistently acknowledged that we must "exercise restraint in reviewing on interlocutory appeal otherwise non-appealable orders," *id*., lest litigants use collateral orders as "multi-issue . . . appeal tickets," *id*. (quoting *Swint*, 514 U.S. at 49–50); *see also Poulos v. Caesars World, Inc.*, 379 F.3d 654, 670 (9th Cir. 2004) (noting that "we took pains to cabin our holding [in *Meredith*] to the unique facts" of the case).

We may exercise pendent jurisdiction over an otherwise non-appealable issue only in two "narrow" circumstances: (1) if it is "'inextricably intertwined' with" or (2) "'necessary to ensure meaningful review of'" the order properly before us on interlocutory appeal. *See Meredith*, 321 F.3d at 813 (quoting *Swint*, 514 U.S. at 51).

The adequacy of the 2013 Proposed Notice is not "inextricably intertwined" with whether the district court abused its discretion in expanding the preliminary injunction. To justify the exercise of pendent jurisdiction, "the legal theories on which the issues advance must either (a) be so intertwined that we *must* decide the pendent issue in order to review the claims properly raised on interlocutory appeal . . . , or (b) resolution of the issue properly raised on interlocutory appeal *necessarily resolves* the pendent issue." *Cunningham*, 229 F.3d at 1285 (emphases added). "We have consistently interpreted 'inextricably intertwined' very narrowly," *id.* at 1284, and "[o]ur cases make clear that if the properly appealable order can be resolved without necessarily resolving the pendent order, then the latter is not 'inextricably intertwined' with the former," *Hilton v. Hallmark Cards*, 599 F.3d 894, 902 (9th Cir. 2009) (citing *Batzel v. Smith*, 333 F.3d 1018, 1023 (9th Cir. 2003)), *as amended* (Mar. 23, 2010).

It is not necessary for us to decide whether the 2013 Proposed Notice was adequate in order to resolve whether the district court abused its discretion in expanding the preliminary injunction. The 2013 Proposed Notice had not been circulated to the class when the preliminary injunction was expanded. Whether the Plaintiffs were likely to succeed on the merits–the sole *Winter* factor the Department has properly contested on appeal–depended on the notice they

had already received, not the notice the Department might provide in the future. Even if the district court had approved the 2013 Proposed Notice, it still would have been appropriate to expand the preliminary injunction to protect the status quo until that notice was circulated. Therefore, the adequacy of the 2013 Proposed Notice was not inextricably intertwined with whether the preliminary injunction should be expanded.

Nor is it necessary to review the adequacy of the 2013 Proposed Notice to "ensure meaningful review" of the order expanding the preliminary injunction. We construe the related "necessary to ensure meaningful review" prong narrowly. *See Poulos*, 379 F.3d at 669 (stating that the second prong is "restrictive" and "requires that the pendent decision have much more than a tangential relationship to the decision properly before us on interlocutory appeal"). Pursuant to our narrow construction of "ensure meaningful review," we may exercise pendent jurisdiction to consider issues that "call[] into question the district court's 'authority to rule on a party's motion for a preliminary injunction.'" *Hendricks v. Bank of Am. N.A.*, 408 F.3d 1127, 1135 (9th Cir. 2005) (emphasis omitted) (quoting *Meredith*, 321 F.3d at 816). But "we have declined to exercise pendent jurisdiction over rulings . . . that were 'not a logical predicate to the' issues properly raised on appeal and did not 'implicate the very power of the district court to issue the rulings on appeal.'" *Id*. (quoting *Wong v. United States*, 373 F.3d 952, 960–61 (9th Cir. 2004)).

The district court's ruling on the 2013 Proposed Notice did not affect its authority to expand the preliminary injunction. Even if the Department was willing to circulate a notice the district court found adequate, a preliminary

injunction still would have been necessary to protect the status quo until that notice was circulated. Therefore, ruling on the proposed notice was not a "logical predicate" to ruling on the preliminary injunction. *See Wong*, 373 F.3d at 960–61. We accordingly decline to exercise jurisdiction to review the district court's order denying the motion to approve the 2013 Proposed Notice. If the Department believes that the district court erred in denying approval of that notice, it may seek a final judgment from the district court in this litigation and appeal that order under § 1291. But the Department cannot have it both ways–continue to litigate this case in the district court and simultaneously seek appellate review of an interlocutory order about the 2013 Proposed Notice. If, as the Department contends, the adequacy of the 2013 Proposed Notice is the only real issue in this case, agreeing to a final judgment will allow prompt appellate review of that issue independent of our determination today that the district court did not abuse its discretion in expanding the prior preliminary injunction to protect class members from losing benefits "unless and until the defendants . . . provide adequate advance notice . . . and the opportunity for a fair hearing."

## CONCLUSION

We affirm the order expanding the preliminary injunction to cover the class for the reasons stated above.

**AFFIRMED.**

CLIFTON, Circuit Judge, concurring in part and dissenting in part:

I fully concur in Parts I–III of the majority opinion. I regret, however, that I must dissent from Part IV, in which the majority concludes that we lack pendant jurisdiction over the district court's denial of the Department's motion to approve a proposed revised notice to program participants. It is clear to me that we do have jurisdiction and should address that issue on the merits.

I agree that we would not have jurisdiction over an appeal from the denial that motion if it were standing by itself, unless, of course, it was brought as an interlocutory appeal under 28 U.S.C. § 1292(b). But it is not standing by itself. It comes to us because it is directly connected to the appeal by the Department of the district court's expansion of the preliminary injunction, over which the majority opinion acknowledges our jurisdiction.

The district court recognized the connection between the two motions. It dealt with both in the same memorandum decision and order. It expressly noted in that order that before it could deal with the motion to extend the preliminary injunction, it was "require[d]" to address the Department's motion to approve the revised notice:

> Plaintiffs move to extend the preliminary injunction entered on behalf of the named plaintiffs to the entire class. Before reaching the merits of that motion, the Court must consider two arguments IDHW raises in opposition. . . . Second, IDHW claims that the motion to extend is moot because IDHW's

> latest proposed Notice satisfies the Medicaid regulations and due process. Resolution of the latter argument requires the Court to decide IDHW's motion to approve their proposed budget notice.

Similarly, the district court explicitly noted that it was the denial of the Department's motion to approve the revised notice that opened the door to granting the motion to extend the preliminary injunction:

> For these reasons, the Court holds that IDHW's notice does not comport with due process, and will deny IDHW's motion to approve the Notice. Furthermore, because the notice is not sufficient, Plaintiffs have established an ongoing violation for the purposes of the preliminary injunction.

The logic is clear. If the revised notice were adequate – if it was held to comport with due process – then Plaintiffs would not have "established an ongoing violation," and there would be no good reason to extend the preliminary injunction. The district court understood and said as much.

The majority opinion offers only one explanation for its different approach. It observes that the proposed notice had not yet been circulated at the time that the motions came before the district court and the preliminary injunction was issued. That is hardly surprising, because no interest would have been served by the Department sending out a revised notice that was inadequate. Doing so would have been wasteful and likely confusing to the recipients.

Nonetheless, the majority opinion, at 27, infers that "[e]ven if the district court had approved the 2013 Proposed Notice, it still would have been appropriate to expand the preliminary injunction to protect the status quo until that notice was circulated."

But the district court never said that. Notably, its discussion of the motions, as quoted above, contradicts the majority opinion's assertion that the preliminary injunction would in fact have been extended if the revised notice had been deemed sufficient. It is both logical and clear from the words used by the district court that if it had concluded that the revised notice was sufficient, it would not have extended the preliminary injunction as it did.

The extension of the preliminary injunction was not a simple thing. The "order" portion of the preliminary injunction as extended by the district court takes up six pages of the court's order. If the district court had concluded that the revised order were sufficient, it would have put the preliminary injunction on hold until the Department had accomplished what it promised to do – distribute the revised notice to the participants – and then dissolved it. The majority opinion's premise to the contrary is both illogical and contrary to what the district court actually said.

Instead, the district court extended the preliminary injunction and refused to modify or dissolve it, as sought by the Department. We are allowed to review the denial of the Department's request that the injunction be modified, conditioned upon the new notice, or dissolved, after the new notice had been distributed. The statute could not be clearer:

> Interlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing or dissolving injunctions, or *refusing to dissolve or modify injunctions*, except where a direct review may be had in the Supreme Court;

28 U.S.C. § 1292(a)(1) (emphasis added).

Similarly, as the majority opinion acknowledges, we may exercise pendant appellate jurisdiction if the denial of the Department's revised notice motion if it is "inextricably intertwined with" or "necessary to ensure meaningful review of" the order extending (and refusing to modify or dissolve) the preliminary injunction. *Meredith v. Oregon*, 321 F.3d 807, 813 (9th Cir. 2003) (citing *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 51 (1995)). For the reasons already discussed, the denial of the revised notice motion fits both descriptions.

The approach of the majority opinion exalts form over substance and does so in a way that, in the future, could cause harm. The Department could, for example, jump the barrier imposed by the majority opinion by sending a revised notice out without waiting for any approval by the district court, then moving to dissolve or modify the injunction. There is no doubt that a denial of that motion would be immediately appealable. What sense is there in motivating the Department – or any party in a similar position in the future – to proceed without consulting with the district court, with other possibly ill effects, simply to permit an immediate appeal it should be entitled to bring?

It is not hard to see how that barrier could thwart appropriate appellate review in the future, especially if a district court could avoid immediate review simply by ruling separately on related motions and declining to acknowledge the connections. The district court here made no effort to do that. To the contrary, and to its credit, it explicitly recognized that the motion to approve the revised notice needed to be dealt with before the motion to extend the injunction, because the second rested upon the resolution of the first. We should not put blinders on by disregarding what was obvious to the district court. And, to mix metaphors, it does not make sense to tie our own hands as the majority opinion has done here.

The majority opinion says that the Department should just agree to final judgment on the case and appeal under 28 U.S.C. § 1291. I fail to see why the Department should be forced to give up whatever other issues might be addressed by the district court before a final judgment is entered. The statute does not require that – preliminary injunctions are immediately appealable. Nor would that alternative route always be available to parties in the future. There could well be issues outstanding in a case that would need to be resolved before a final judgment could be entered, unless the party simply abandoned its claims or confessed judgment on whatever might remain. That would hardly be a realistic alternative in those circumstances, and it should not be the price to obtain review of a decision that undergirds the district court's order regarding a preliminary injunction.

The district court recognized that the revised motion order needed to be taken up and resolved before the court could

address the preliminary injunction motion.  We should do the same.

   I respectfully dissent, in part.