**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| THE MARY FERRELL FOUNDATION, INC., *et al.*, | No.   24-1606 |
| Plaintiffs-Appellants, | D.C. No. 22-cv-06176-RS |
| v. | Northern District of California, San Francisco |
| JOSEPH R. BIDEN, *et al.*, | |
| Defendants-Appellees. | |
| | MEMORANDUM* |

Appeal from the United States District Court
for the Northern District of California
Chief District Judge Richard Seeborg, Presiding

Argued and Submitted November 13, 2024
San Francisco, California

Before:  S.R. THOMAS and MILLER, Circuit Judges, and MOLLOY,** District Judge.

The Mary Ferrell Foundation ("MFF"), a nonprofit corporation that

maintains an archive of documents related to the John F. Kennedy ("JFK")

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*      The Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation.

assassination, and two of its members, appeal the district court's order denying their claims for injunctive relief as well as the court's order granting in part the National Archives and Records Administration's ("NARA") motion to dismiss. Because the parties are familiar with the factual and procedural history of the case, we need not recount it here. We affirm the district court's order denying injunctive relief and dismiss the appeal of the order partially granting the motion to dismiss.

I

We lack appellate jurisdiction to review MFF's appeal of the district court's order granting in part and denying in part NARA's motion to dismiss. No final judgment has issued in the case, and litigation is ongoing in the district court. *See Prellwitz v. Sisto*, 657 F.3d 1035, 1038 (9th Cir. 2011) ("[T]he district court's order was not final because it did not dispose of the action as to *all* claims between the parties.").

We also do not have pendent jurisdiction. *See Hilton v. Hallmark Cards*, 599 F.3d 894, 902 (9th Cir. 2010) (no pendent jurisdiction when "the properly appealable order can be resolved without necessarily resolving the pendent order"). "Pendent appellate jurisdiction refers to the exercise of jurisdiction over issues that ordinarily may not be reviewed on interlocutory appeal, but may be reviewed on interlocutory appeal if raised in conjunction with other issues properly before the

court." *Cunningham v. Gates*, 229 F.3d 1271, 1284 (9th Cir. 2000). "To justify the exercise of pendent jurisdiction, the legal theories on which the issues advance must either (a) be so intertwined that we *must* decide the pendent issue in order to review the claims properly raised on interlocutory appeal . . ., or (b) resolution of the issue properly raised on interlocutory appeal *necessarily resolves* the pendent issue." *K.W. ex rel. D.W. v. Armstrong*, 789 F.3d 962, 975 (9th Cir. 2015) (internal quotations and citation omitted). "[I]f the properly appealable order can be resolved without necessarily resolving the pendent order, then the latter is not 'inextricably intertwined' with the former." *Hilton*, 599 F.3d at 902. It is not necessary for us to determine if the court erred in granting in part NARA's motion to dismiss in order to review the district court's order denying preliminary injunctive relief.

For these reasons, we must dismiss the appeal of the dismissal order.

II

A district court's decision regarding preliminary injunctive relief is subject to limited review. *See Puente Arizona v. Arpaio*, 821 F.3d 1098, 1103 (9th Cir. 2016). We reverse the district court only if it "abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact." *Fed. Trade Comm'n v. Consumer Def., LLC*, 926 F.3d 1208, 1211–12 (9th Cir.

3

2019). To obtain a preliminary injunction, a plaintiff bears the burden of establishing "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, [4] and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

The district court denied MFF's motions for injunctive relief, seeking preliminary injunctions: (1) to set aside the Biden memoranda and NARA Guidance Document, and (2) to instruct NARA to collect all remaining assassination records before the Archivist certifies that "all assassination records have been made available to the public in accordance with the Act," JFK Act § l2(b).

A

The district court did not abuse its discretion in concluding that MFF was unlikely to succeed on the merits of the first request for preliminary injunction, which seeks to set aside the Biden memoranda and NARA Guidance Document. MFF's request for injunctive relief is based on various claims that the 2022 and 2023 Biden memoranda postponing release under Section 5(g)(2)(D) violated the requirements of the Act.

First, MFF asks us to set aside Section 6(a) of the 2022 Biden Memorandum because it "rewrite[es] the definition of 'public interest' rather than using the definition . . . in the JFK Records Act." However, in his Memorandum, the President did not purport to modify the statutory definition of "public interest" in any way. Rather, the Memorandum merely requests that agencies give "substantial weight to the public interest." This direction is completely compatible with the statutory definition of "public interest."

Second, MFF requests that Section 7 of the 2022 Biden Memorandum also be set aside because it allows for "event-based and circumstance-based conditions" to trigger disclosure, which—according to MFF—is incompatible with the JFK Records Act. MFF concedes that the President may allow for "triggering events or circumstance" to dictate document disclosure. However, MFF asserts that "the name and identity of a living person - standing alone - is a non-statutory criterion." In adopting the Transparency Plans, the President did not postpone the release of information based solely on an individual's name and identity. Rather, the President expressly stated that continued postponement "is necessary to protect against identifiable harms to the military defense, intelligence operations, law enforcement, and the conduct of foreign relations that are of such gravity that they outweigh the public interest in disclosure." 87 Fed. Reg. 77,967, 77,968 (Dec. 15,

5

2022). The President's actions were consistent with the Section 5(g)(2)(D) requirements.

Third, MFF asks us to set aside a portion of the 2023 Biden memorandum that states—allegedly inaccurately—that the President's duty to certify the postponement of records is no longer required. MFF contends that periodic review must continue, notwithstanding the President's final certification in the Memorandum.

MFF is conflating two separate sections of the Act. Section 9(d) applies to postponement by the President after an initial determination by the Assassination Records Review Board ("Board"), while Section 5(g)(2)(D) of the Act contains no reference to further periodic review after the 25-year deadline. MFF does not cite any determination by the now defunct Board that would require periodic review.

Finally, MFF requests us to set aside NARA Guidance Document which allegedly used non-statutory criteria in making disclosure decisions. However, MFF fails to explain how this internal direction played any role in the President's eventual certification decision. The record establishes that the Guidance Document was merely meant to help agencies determine what information to provide the President. No provision of the Act was violated in this directive.

In sum, the district court correctly concluded that MFF was unlikely to prevail on any of these claims.

B

The district court also properly concluded that MFF failed to show likelihood of success on the merits relating to its request for a preliminary injunction instructing NARA to collect additional assassination records. This request for injunctive relief is unlikely to succeed on the merits for several reasons.

First, it is contrary to the statutory language of the Act. The Act clearly requires the Board, not NARA, to oversee the collection and review of the assassination records. Act § 5(c)(1); *see also* Act § 7(i)-(j). No provision of the Act purports to impose this duty on NARA. The NARA and the Board are two distinct entities, separately referenced in the Act and tasked with separate statutory functions. *See* Act §§ 3(5)(D) (defining the National Archives); 3(12) (defining the Review Board); 5(f) (discussing the responsibilities of the National Archives); 4(d)(2) (same); 7 (discussing the establishment and responsibilities of the Review Board). In fact, Congress specifically and explicitly expressed that the Board's obligations would cease when the Board itself terminated. Act § 12(a) ("The provisions of this Act that pertain to the appointment and operation of the Review Board shall cease to be effective when the Review Board and the terms of its

members have terminated pursuant to section 7(o).").  To transfer the responsibilities of the Board onto NARA would defeat Congress' intent to time-limit the Board and its responsibilities.

Second, MFF is also unlikely to succeed on the merits because it is attempting to compel agency action and as such must be able to bring its claim under the Administrative Procedure Act ("APA").  Under the APA, a court can "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  A § 706(1) claim can proceed only where a plaintiff "asserts that an agency failed to take a discrete agency action that it is required to take."  *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).  Here, MFF challenges the NARA's failure to collect additional assassination records.  However, it fails to identify a "discrete" agency action NARA is "legally required" to take.  The Act clearly requires the Board, not NARA, to oversee the collection and review of the assassination records.  Act § 5(c)(1).

C

The district court also did not abuse its discretion in concluding that MFF failed to demonstrate it will suffer irreparable harm if the requested injunctions are not granted.  A plaintiff must show that she "is likely to suffer irreparable harm in the absence of preliminary relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S.

8

7, 20 (2008). "[S]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction . . . a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1022 (9th Cir. 2016) (internal citations omitted).

MFF asserts it will suffer irreparable harm because "witnesses . . . are dying every day" and "individuals in the documents are . . . at the age the risk of death and dementia exponentially accelerates." The alleged harm asserted by MFF is wholly speculative—it relies on the premise that the witnesses would be available and willing to be interviewed, and that the information gleaned in the interviews would result in the discovery of documents that are not already in NARA's possession and would not be identified if not for the interview. MFF also fails to explain how absent an injunction enjoining NARA from implementing the President's memoranda or mandating that NARA conduct additional searches, one or more of the relevant witnesses could potentially die before they can provide the hypothetical information. However, such speculative injury is not sufficient to warrant a preliminary injunction. *See Goldie's Bookstore, Inc. v. Superior Ct. of State of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984).

MFF's delay in requesting preliminary injunctive relief also weakens its claim of irreparable harm. "A preliminary injunction is sought upon the theory that there is an urgent need for speedy action to protect the plaintiff's rights. By sleeping on its rights a plaintiff demonstrates the lack of need for speedy action." *Lydo Enterprises, Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) (internal citations omitted). The Act has been in place for over 30 years and the relevant witnesses have been continuously aging. MFF did not seek the relevant preliminary injunctions until October and December of 2023, over a year after filing its initial complaint and multiple years after the President first invoked his authority under Section 5(g)(2)(D). MFF did not act in a manner that would elicit "emergency relief," and therefore, the delay in filing the preliminary injunction "undercut" MFF's claim for irreparable harm. *See Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015). Therefore, the district court did not abuse its discretion in finding that MFF failed to show irreparable harm.

D

The balance of harms and the public interest weigh heavily against the granting of the preliminary injunctions. The third and fourth requirements for the issuance of a preliminary injunction—the balance of harms and the public interest—"merge when the Government is the opposing party." *Nken v. Holder*,

10

556 U.S. 418, 435 (2009). Here, those factors weigh overwhelmingly against the requested injunctions.

MFF fails to show how its request to enjoin the Biden memoranda would be in the public interest. The President determined that postponement subject to the Transparency Plans is necessary to protect "the military defense, intelligence operations, law enforcement, or the conduct of foreign relations," and that the harm from disclosure is "of such gravity that it outweighs the public interest in disclosure." 87 Fed. Reg. at 77,968; 88 Fed. Reg. 34,247, 43,248 (July 7, 2023). Not only does the Act specifically grant this authority to the President, Act § 5(g)(2)(D), but overriding such a determination would be contrary to the deference the Judiciary owes the Executive Branch regarding matters of national security. *See United States v. Jennings*, 960 F.2d 1488, 1491 (9th Cir. 1992) ("The judiciary does not have a license to intrude into the authority, powers and functions of the executive branch, for judges are not executive officers, vested with discretion over law enforcement policy and decisions.") (cleaned up).

With respect to MFF's request for NARA to "collect all remaining assassination records," MFF fails to show how the requested collection effort would be in the public interest. All relevant assassination records that have been identified to date have been transferred to NARA. Therefore, any obligation to

11

collect additional assassination records would fall within the purview of the relevant agencies, not NARA. *See* Act § 5(a) ("[E]ach Government office shall identify and organize its records relating to the assassination of President John F. Kennedy and prepare them for transmission to the Archivist for inclusion in the Collection."). It is unclear what benefit imposing such an order would have—the NARA merely serves as a records recipient, as NARA itself does not independently maintain Government records, but rather serves as a "custodian of assassination records." Act § 3(5)(D).

III

In sum, we must dismiss MFF's appeal of the dismissal order for lack of appellate jurisdiction. The district court did not abuse its discretion in denying the requested preliminary injunctions.

**AFFIRMED IN PART; DISMISSED IN PART**.